CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

JUL 15 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL BERNIER, *et al*, | ) | CASE NO. 3:05CV00011 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| COLUMBIA GAS TRANSMISSION CORP. | ) | |
| | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Defendant, | ) | U.S. MAGISTRATE JUDGE |

Before the court are the defendant's March 2, 2005 motion to dismiss plaintiff's Complaint under FED. R. CIV. P. 12(b)(6) and the plaintiff's April 1, 2005 motion to remand the case to the Circuit Court of Culpeper County, Virginia, from which court the case was removed, for want of subject matter jurisdiction. Additionally, during the course of arguments on the motions held on April 29, 2005, the plaintiffs, by counsel, moved to voluntary dismiss Count Four of the Complaint, which set forth allegations fo inverse condemnation. All dispositive motions are before the court under the authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations with regard to their disposition. For the reasons that follow, the undersigned will RECOMMEND that an order enter DENYING both plaintiff's motion for remand and defendant's motion to dismiss but GRANTING the plaintiff's verbal motion to voluntarily dismiss Count Four and DISMISSING that count without prejudice under fed. R. Civ. P. 41(a)(2).

**PROCEDURAL HISTORY**

On or about January 28, 2005, plaintiffs filed a Bill of Complaint in the Circuit Court of

-1-

Culpeper County, Virginia ("Complaint") setting forth four causes of action relating to defendant's construction of an above-ground appurtenance to a gas transmission easement over plaintiff's property in Culpeper County, Virginia ("the property") which easement was held by defendant as a successor in interest to the Atlantic Seaboard Corporation ("Atlantic"). In Count One, plaintiffs allege that the defendant breached the provisions of the easement by construction a gas valve facility ("the facility") on their property above the level of cultivation. Complaint ¶ 1-10. Additionally, plaintiffs claim that, even if the construction of the facility did not violate the terms of the easement agreement, the defendant has breached the contract by failing to compensate plaintiffs for the damage to the premises for the additional burden on the property caused by the facility. Complaint ¶ 11. In Count Two, plaintiffs allege that the defendant trespassed on the premises by constructing and maintaining the gas valve facility without their permission, express or implied. Complaint ¶ 12-17. In Count Three, plaintiffs request under VA CODE § 8.01-184 that the court declare the parties' respective interests in the premises and finding that the facility was constructed beyond the scope of the easement.

On February 24, 2005, the defendant filed a Notice of Removal asserting diversity jurisdiction under 28 U.S.C. §§ 1441 and 1332. Defendant has certificated that it is a Delaware corporation and, thus, a citizen of Delaware for diversity purposes, that plaintiffs are citizens of Virginia, and that the amount in controversy exceeds $75,000. Notice of Removal ¶ 6-8. Moreover, defendant has certified that, pursuant to 28 U.S.C. § 1446(b), the Notice of Removal is timely because it was filed within thirty days of its receipt of plaintiffs' Complaint,[1] and that this is

---

[1] Defendant was served with process and the Bill of Complaint on February 4, 2005. Notice of Removal ¶ 2.

the proper federal forum within meaning of 28 U.S.C. §§ 1441 and 1446(a). Notice of Removal ¶ 9, 11. On March 2, 2005, defendant filed a motion to dismiss all counts in the Complaint under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted. On April 1, 2005, plaintiff moved to remand this action to the state court on the ground that complete diversity between the parties is lacking.

**FACTUAL BACKGROUND**

Plaintiffs acquired the property from R. Scott Chilton III and Michalene M. Chilton ("Chilton") by a deed dated April 9, 1986 and recorded the same day in the Office of the Clerk of the Circuit Court of Culpeper County, Virginia in Deed Book 345 at Page 782. Complaint ¶ 1. The property was encumbered by an easement, dated and recorded on March 29, 1966, which R. Scott Chilton, Jr, and his wife previously had granted to Atlantic, defendant's predecessor in interest.[2] The form agreement contained pre-printed provisions with interlineated additions as well as deletions but, nevertheless, granted to defendant's predecessor "the right to lay, maintain, operate and remove a pipeline for the transportation of gas, and appurtenances, including cathodic protection, necessary to operate said pipeline, on, over and through a right of way easement . . .." Complaint ¶ 2 and Exhibit B. Additionally, the agreement provided:

> "It is agreed that the gas line to be laid under this grant shall be constructed and maintained *below cultivation*, so that Grantors may fully use and enjoy the premises, except for the purposes herein granted to the said Grantee and provided that said Grantor shall not place or permit to be placed any house, structures, trees or obstructions on or over or that will interfere with the construction, maintenance, operation or removal of the pipeline or appurtenances constructed hereunder . . .."

Id. (emphasis added).

---

[2]Copies of the easement agreement are attached to plaintiff's Bill of Complaint filed in the state court as well as to the parties briefs in support of or in opposition to the motions before the court.

-3-

On or about March 25, 2004, the defendant began construction of a gas valve facility above the level of cultivation and, according to the allegations in the complaint, without plaintiffs' knowledge or consent. Plaintiffs allege that the instant facility represented the first time in the history of the pipeline's operation and maintenance that the defendant or any of its predecessors had constructed or maintained any part of the "gas line above [the plane of] cultivation." Complaint ¶ 4. Plaintiffs further allege that the facility has three primary functions: (1) to provide a bypass for the gas line while the facility is being maintained, (2) to permit automatic shutoff of gas flow, and (3) to allow for temporary "blow-offs" of gas into the atmosphere during maintenance. Complaint ¶ 5.

On October 28, 2004, plaintiffs, by their counsel, demanded that the defendant remove the facility because, in their view, it contravened the easement agreement. Complaint, Exhibit D. On November 11, 2004, counsel for the defendant declined. This action ensued.

## CONTENTIONS OF THE PARTIES

*Motion for Remand*

<u>Plaintiff's Arguments</u>

Plaintiffs seek a remand on the ground that complete diverse is lacking. 28 U.S.C. §§ 1441 and 1332. There is no dispute that plaintiff has set forth only state law claims, and there is no dispute that defendant is incorporated in Delaware. Plaintiffs contend, however, that under 28 U.S.C. § 1332(c)(1) a corporation also is considered a citizen of the state where it maintains its principal place of business which plaintiff believes is Virginia because the defendant has established its home office and nerve center at 12801 Fair Oaks Parkway, Fairfax, Virginia.

In making this argument plaintiffs essentially rely on decisions by the Fourth Circuit Court

Case 3:05-cv-00011-NKM-BWC  Document 20  Filed 07/15/05  Page 4 of 20  Pageid#: 163

of Appeals which employed two different tests to determine a corporation's principal place of business, namely the "nerve center" test and the "place of operations" test. *Mullins v. Beatrice Pocohantas Co.*, 489 F.2d 260, 262 (4th Cir. 1974). Plaintiffs explain that the "nerve center" test focuses on the location of a corporation's executive and administrative offices from which the officers of the corporation direct, control, and coordinate its policies and activities. *Mitchell v. Monongahela Power Co.*, 602 F.Supp. 756, 758 (S.D.W.Va 1985). On the other hand, the "place of operations" test determines a corporation's primary place of business by focusing on the state in which the corporation carries out the bulk of its business activities. *Carolina Carbon and Stainless Products, Inc. v. Ipsco Corporation*, 635 F.Supp. 305, 307 (W.D.N.C. 1986).

Plaintiffs contend that this court should apply the "nerve center" test because that test was specially designed to address corporations engaged in multistate activities where, as here, there is no clear center of corporate activity. *AFA Enterprises, Inc. v. American States Insurance Co.*, 842 F.Supp. 902, 906 (S.D.W.Va. 1994); *Arbee Mechanical Contractors, Inc. v. Capital Sun Corporation*, 682 F.Supp. 144, 147 (E.D.Va. 1988). Plaintiffs rely on an affidavit offered by their counsel to establish that the defendant's operations encompass portions of nine states in the East and Midwest, that the defendant manages a 12,750-mile gas pipeline network by which it serves customers in those states, and that it operates one of North America's largest underground natural gas storage systems. Because of the extensive geographic scope of defendant's activities, plaintiffs contend that the "nerve center" test is a more appropriate indicator of the defendant's primary place of business than the "place of operations" test. Finally, plaintiffs argue that an application of the "nerve center" test requires the conclusion that Virginia is the defendant's primary place of business because, according to its website, the defendant's corporate headquarters is located in

Fairfax, Virginia.

<u>Defendant's Rebuttal</u>

The defendant does not dispute the state of the law in this circuit, but it warns that in order to apply the "nerve center" test, the court would be required to ignore a host of district court decisions in this circuit which specifically have applied the "place of operations" test to this defendant's activities and have found that its principle place of business to be West Virginia. *See Columbia Gas Transmission Corp. v. Burdette Realty Improvement, Inc.*, 102 F.Supp.2d 673, 675 (S.D.W.Va. 2000), *aff'd* 62 Fed.Appx. 544 (4th Cir. 2003)(unpublished opinion); *Columbia Gas Transmission Corp. v. An Exclusive Gas Storage Easement*, 776 F.2d 125, 126 (6th Cir. 1985); *Columbia Gas Transmission Corp. v. Lauren Land Co., Inc.*, 180 F.R.D. 322, 323 (E.D. Ky 1998); *Columbia Gas Transmission Corp. v. Davis*, 33 F.Supp.2d 640, 641 (S.D. Ohio 1998); *Columbia Gas v. Tarbuck*, 845 F.Supp. 303, 304 (W.D. Pa. 1994); *Columbia Gas Transmission Corp. v. Bishop*, 220, 220-21 (W.D.N.Y. 1992); *Swango Homes, Inc. v. Columbia Gas Transmission Corp.*, 806 F.Supp. 180 (S.D. Ohio 1992).

The defendant especially encourages the court to consider the reasoning of the *Burdette* decision from the Southern District of West Virginia, a decision summarily upheld by the Fourth Circuit. *See Columbia Gas Transmission Corp. v. Burdette Realty Improvement, Inc.*, 62 Fed.Appx. 544, 545 (4th Cir. 2003)(unpublished opinion). Columbia Gas argues here that the *Burdette* court conducted an extensive analysis of the law relating to a corporation's primary place of business and concluded that the "nerve center" test should be narrowly construed to apply only to corporations whose business operations are "far flung and varied," particularly corporations such as "a holding company or passive corporation that is engaged primarily in the ownership and

Case 3:05-cv-00011-NKM-BWC   Document 20   Filed 07/15/05   Page 6 of 20   Pageid#: 165

management of investment assets such as debt or equities [and] is not really geographically bound." *Burdette*, 102 F.Supp.2d at 676. The *Burdette* court certainly was of the view that Columbia Gas was not the type of corporation for which the "nerve center" test was designed because, although its sales and delivery are dispersed across many states, it has a clearly defined hub of operations from which it manages its pipeline network. The court found that West Virginia was the state in which the bulk of Columbia Gas' business operations occur, that is, the state in which Columbia is most visible, has the greatest contact with the public, and considers its home. *Id.*

Defendant has submitted an affidavit of W. Harris Marple, Vice President of Pipeline Operations, which reveals that West Virginia is the state where the majority of Columbia's employees work, where it maintains its office and headquarter for its network of gas pipelines and commercial support headquarters, and that the company holds itself out to be a West Virginia entity. Affidavit of W. Harris Marple ¶¶ 3-6, 11. While defendant concedes that its corporate headquarters is located in Fairfax, Virginia, it offers that only 2% of its employees work there. *Id.* ¶ 8. Plaintiff have offered no countervailing evidence or decisional authority.

**Motion to Dismiss**

<u>Defendant's Arguments</u>

Defendant has moved to dismiss Counts One through Three of the plaintiffs' state court Bill of Complaint ("Complaint") under Rule 12(b)(6) for failure to state a claim upon which relief may be granted on the ground that, as a matter of law, the easement agreement, itself, permits the construction of the gas valve facility on the plaintiffs' land.[3] In that connection, defendant offers

---

[3] Plaintiff has also voluntarily moved to dismiss Count Four of the Bill of Complaint, to which the defendant has lodged no opposition.

that the foundational inquiry is the propriety of its installation of the gas valve facility. If that is determined favorably to the defendant, the court should find no breach of contract, no trespass, and no violation of the easement for declaratory judgment purposes.

The defendant begins its analysis by contending that normal principles of contract construction should apply to give the easement agreement its plain meaning and effect. *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*, 65 F.3d 1113 (4th Cir. 1995); *Pyramid Development LLC v. D and J Associates*, 262 Va. 750 (2001); *Hamlin v. J.J. Pandapas*, 197 Va 659 (1956). It argues that the court must determine "plain meaning" in accordance with the language used by the parties in the agreement, and should interpret the agreement such that, if possible, every clause is given some effect. *Hitachi Credit American Corp. v. Signet Bank*, 166 F.3d 614 (4th Cir. 1999); *Pacific Insurance Co. v. American National Fire Insurance Co.*, 148 F.3d 396 (4th Cir. 1998). Absent express language restricting the scope of the easement, Columbia Gas offers that the easement agreement must be interpreted to permit it "to do what is reasonably necessary to enjoy the full rights established by the easement." *The County of Patrick, Virginia v. United States*, 596 F.2d 1186, 1191 (4th Cir. 1979).

Moving to the specific language of the easement agreement, the defendant first points to the provision which, in the defendant's view, expressly contemplates the construction of appurtenances "over" the right of way. Specifically, the agreement provides defendant with "the right to lay, maintain, operate and remove a pipeline for the transportation of gas, *and appurtenances*, including cathodic protection, necessary to operate said pipeline, on, *over* and through a right of way easement

. . . ." Complaint, Exhibit B (emphasis added). While conceding that the agreement restricts the

construction and maintenance of the "gas line" to "below cultivation," Columbia argues that the term "gas line" must be construed to be synonymous with and limited to the "pipeline." According to this view, the "below cultivation" restriction should not be interpreted similarly to limit the construction and maintenance of "appurtenances" to "below cultivation."

Columbia posits several reasons for its interpretation of the agreement and its conclusion. First, the easement agreement refers to the "pipeline for the transportation of gas" and "appurtenances" separately and in succession in the initial clause, thus revealing to defendant that the drafters of the agreement intended to treat "pipeline" and "appurtenances" as distinct subjects. Further, it notes that the "below cultivation" restriction refers only to the "gas line" and not "appurtenances," and that the balance of that portion of the agreement prohibits the landowners from interfering with "construction, maintenance, operation or removal of the " pipeline *or* appurtenances." (Emphasis added).

In addition, defendant offers that any effort to include "appurtenance" in the definitions either or both "pipeline" and "gas line" would render the term "appurtenance" meaningless and violate the clear interpretive principle that all contractual terms should be construed as if they were included for a reason. The same rationale is offered for the inclusion of the word "over" in the granting clause of the agreement. In other words, the defendant contends that, when the agreement is considered as a whole, its interpretation of "gas line" to exclude the notion to "appurtenances" harmonizes the granting clause with the restriction clause, such that the easement agreement permits the construction and maintenance of appurtenances to the pipeline "over" the easement property but requires the construction and maintenance of the pipeline itself to be "below cultivation." Columbia cites *Withers v. Mobil Gas Services Corporation*, 567 So.2d 253 (Ala.

Case 3:05-cv-00011-NKM-BWC   Document 20   Filed 07/15/05   Page 9 of 20   Pageid#: 168

1990) and *Koelsch v. Industrial Gas Supply Corporation*, 132 S.W.3d 494 (Tx. Ct. App. 2004) to support its contentions in this case.

Finally, the defendant argues that, as a matter of law, the gas valve facility here at issue is "reasonably necessary" to the enjoyment of the easement rights expressly granted, namely the right to install and maintain a pipeline for the transportation of gas through the plaintiffs' property. The defendant points out that the plaintiffs have conceded in their Complaint that the facility is necessary for the maintenance and operation of the pipeline. Thus, in defendant's view, plaintiffs' claims should be dismissed because they seek to invade the defendant's reasonable enjoyment of its rights under the easement.

Columbia also specifically addresses plaintiffs' alternative claim for damages under Count One. The defendant concedes that the agreement contains language requiring it to pay for "any damages that may arise from the maintenance, operation and removal of said lines." Complaint, Exhibit B. However, the defendant argues that, if its interpretation of the easement agreement is correct and the construction of the gas valve facility was legally proper, no damages can be assessed from the mere fact of construction. The defendant believes its rights under the easement were granted by the Chiltons, from whom the plaintiffs purchased the property, in exchange for monetary compensation in the amount of $975. Columbia contends that it is unreasonable for the plaintiffs now to demand *additional* compensation for its *exercise* of such rights within the scope of the easement agreement. For this reason, the defendant argues that the alternative claim in Count One should be dismissed.

Plaintiffs' Rebuttal

Plaintiffs oppose Columbia's motion first on the basis that the question of contractual

Case 3:05-cv-00011-NKM-BWC   Document 20   Filed 07/15/05   Page 10 of 20   Pageid#: 169

interpretation, as raised by the defendant, is beyond the reach of a Rule 12(b)(6) motion to dismiss because it does not probe the legal sufficiency of plaintiffs' claims but rather the likelihood of their success at trial. In other words, if the contract must be interpreted, that is a mixed question of law and fact which must await trial. Nevertheless, plaintiffs address Columbia's contentions here by offering that a plain reading of the easement agreement demonstrates Columbia exceeded its boundaries thereunder by building the gas valve facility. Even if the plain language of the agreement does not support their position, they believe that the terms of the easement are ambiguous, subject to parole evidence to explain their context, and thus inappropriate to address on a motion to dismiss. *See Strickland v. Barnes*, 209 Va. 438 (1968); *Portsmouth Gas Co. v. Shebar*, 209 Va. 250 (1968).

Because the two terms "gas line" and "pipeline" are set out separately in the granting and restricting clauses, plaintiffs believe that in discerning the plain meaning of the easement the two cannot be conflated. In their view, the term "gas line" encompasses the entire apparatus of both the "pipeline" *and any* "appurtenances." As a matter of logic, therefore, they argue that the two are not coextensive, and that the only plain and reasonable interpretation is that the drafters intended the term "gas line" to incorporate both "pipeline" and "appurtenances." Moreover, plaintiffs argue that the restriction clause not only prohibits the construction of the gas line above the level of cultivation but also its *maintenance*. Plaintiffs, therefore, contend that since the gas valve facility was designed to assist the defendant in maintaining the gas line, the easement agreement required that it be built below cultivation.

Further, plaintiffs argue that the defendant's interpretation of the agreement fails to address those portions of the pre-printed agreement which the Chiltons deliberately excised prior to

signing. Specifically, the Chiltons refused to grant the defendant's predecessor in interest the "right to erect and operate alongside said [gas] line a telephone, telemetering, telegraph, or other wire line and necessary poles therefore." Complaint, Exhibit B. The Chiltons also struck through language that would have granted "the right . . . to lay additional lines of pipe approximately parallel to the first line herein provided, upon the payment of the price above mentioned for each additional line to be laid." Id. Plaintiffs argue that these intentional excisions countervail Columbia's theory that the Chiltons intended to *permit* the construction and maintenance of above-ground appurtenances to the gas line, including such facilities as the one here at issue and, indeed, demonstrate just the opposite, namely that the Chiltons wished nothing to be built above ground. In other words, plaintiffs seem to contend that the Chilton property was a mere conduit for an underground system which could not be seen and which was deep enough not to interfere with the then agricultural use of the land through which the system ran.

In addition to arguing that the language of the agreement plainly forbids the above-ground gas valve facility, or, at worst, that the language of the agreement is ambiguous, plaintiffs contend under Virginia law that, where the character of an easement once has been fixed, no material alterations can be made in the physical conditions which are essential to the proper enjoyment of the easement except by agreement. *See Vance v. Davis*, 195 Va. 730 (1954); *City of Lynchburg v. Smith*, 166 Va. 364 (1936). Plaintiffs point out that between 1966 and 2004 neither the defendant nor its predecessor in interest built any facility above the level of cultivation. Plaintiffs argue that the character of the easement was fixed by the underground limits on its use in the forty years prior to 2004. As plaintiffs view it, the gas valve facility exceeds the scope of the written easement which saw its practical effects demonstrated in forty years of use.

-12-

## STANDARD OF REVIEW

In determining whether to remand for lack of subject matter jurisdiction, a court may consider the complaint, the notice of removal, and any subsequently filed affidavits as long as such extrinsic evidence is offered to clarify or correct technical deficiencies in the original notice. *Willingham v. Morgan*, 395 U.S. 402, 408 (1969). Moreover, the burden is on the defendant attempting to remove a case from state court to establish the subject matter jurisdiction of the court to which the case is removed. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Carpenter v. Witchita Falls Independent School District*, 44 F.3d 362, 365-366 (5th Cir. 1995).

In assessing any motion to dismiss under FED. R. CIV. P. 12(b)(6), a court must construe the plaintiff's pleading liberally, taking all facts alleged in the complaint as true and resolving all doubts and drawing all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-244 (4th Cir. 1999). A court is not, however, required to accept any legal conclusions set forth in the complaint. *District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979). The burden rests upon the defendant to demonstrate beyond doubt that the plaintiff can prove no set of facts to support the claim for relief asserted. *Ragin v. New York Times Co.*, 923 F.2d 995, 999 (2nd Cir. 1991)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF LAW

Since plaintiff's motion for remand challenges the court's subject matter jurisdiction, and the court's resolution of the question of jurisdiction may preclude consideration of the merits of plaintiffs' claims, the undersigned will address the motion for remand first before evaluating the defendant's Rule 12(b)(6) motion to dismiss.

*Motion to Remand*

Under 28 U.S.C. §§ 1441 and 1332, removal of an action filed in state court is proper where the parties are completely diverse, the amount in controversy exceeds $75,000, and no defendant is a citizen of the state in which such action is brought. Unlike an individual party, a corporate party generally is deemed to be a citizen both of the state in which the party is incorporated and of the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). In the present action, it is undisputed that plaintiffs are citizens of Virginia and defendant is incorporated in Delaware. Plaintiffs assert that the defendant is also a citizen of Virginia because its principal place of business is Virginia in that its corporate headquarters are in Northern Virginia.

If this court were operating on a clean decisional slate, plaintiff's contention here would be very inviting. Yet, the clear weight of authority in this circuit demonstrates that the Columbia's principal place of business, for jurisdictional purposes, has been established as West Virginia. *See Columbia Gas Transmission Corp. v. Burdette Realty Improvement, Inc.*, 102 F.Supp.2d 673, 675 (S.D.W.Va. 2000), *aff'd* 62 Fed.Appx. 544 (4th Cir. 2003)(unpublished opinion). Plaintiff has not offered the undersigned a reason to depart from the holdings in these cases. Moreover, the jurisdictional facts here essentially track those presented in the *Burdette* case, and that court's rationale for declining to apply the "nerve center" test in favor of the "place of operations" is compelling. Accordingly, the undersigned entirely adopts the *Burdette* court's analysis.

The only issue remaining is whether the facts upon which the *Burdette* court based its holding have changed in the past five years. Those facts included where the corporation (a) is most visible, (b) has the most contact with the public, and (c) considers its home. *Burdette*, 102 F.Supp.

-14-

at 676-679. Particularly, the court found that "the bulk of the day to day business operations that create the sale or cause the delivery [of natural gas] take place in West Virginia." *Id.* at 679. The court also cited a 1996 press release by Columbia's CEO and President which stated that Columbia' Charleston office "will continue to function as the primary operations and commercial support headquarters for the company's . . . natural gas pipeline network" and that "the largest concentration of Columbia Transmission employees will continue to be here in West Virginia." *Id.*

The defendant has submitted the affidavit of W. Harris Marple, Columbia's Vice President of Pipeline Operations to show that nothing has changed. In that affidavit, Marple states that, "[o]f the 1,250 Columbia Gas employees, 252 people are employed in its Charleston, West Virginia, office and 580 people are employed throughout West Virginia." Affidavit of W. Harris Marple ¶ 5. "Columbia Gas's assets, which include over 10,000 miles of natural gas pipelines, . . . are maintained and controlled by the Charleston, West Virginia, office, which serves as the primary operations center." *Id.* ¶ 6. Meanwhile, "less than 2% of Columbia Gas employees are located in the Fairfax, Virginia office (25 employees)." *Id.* ¶ 8.

Plaintiffs' challenge to these facts consists only of a reference to pages on the defendant's website in which Fairfax, Virginia is named as the site of Columbia's corporate headquarters. *See* Plaintiffs' Motion to Remand Removed Action, Exhibit C. Columbia concedes that its corporate offices are located in Virginia, but asserts that Virginia clearly is not the principal place of its business activity since so little of the company's operations are performed there.

The undersigned agrees and finds that, under 28 U.S.C. § 1332(c)(1), Columbia is a citizen of Delaware with its principal place of business in Charleston, West Virginia. Thus, the parties are completely diverse, and accordingly, the undersigned RECOMMENDS that an order enter

Case 3:05-cv-00011-NKM-BWC   Document 20   Filed 07/15/05   Page 15 of 20   Pageid#: 174

DENYING plaintiff's motion for remand.[4]

## Motion to Dismiss

It is well-settled law in Virginia that, "[w]here an easement has been granted or reserved by deed, the ordinary rule which governs in the construction of other writings prevails, namely, that the rights of the parties must be ascertained from the words of the deed, and the extent of the easement cannot be determined from any other source. But where its language is ambiguous, the court in order to ascertain the intention of the parties looks to the language employed in the light of the circumstances surrounding the parties and the land at the time the deed was executed." *Cushman Virginia Corp. v. Barnes*, 204 Va. 245, 251 (1963)(quoting from *Stephen Putney Co. v.*

---

[4] It should be noted here that plaintiffs also argue that the case should be remanded to state court because defendant failed to file its motion to dismiss within the period permitted under FED. R. CIV. P. 81(c). Plaintiffs admit that, even if defendant's motion to dismiss was not timely filed, the Rules do not require a remand of the case but leave the decision firmly within the discretion of the district court. *See Sicinski v. Reliance Funding Corp.*, 461 F.Supp. 649 (S.D.N.Y. 1978). Nevertheless, plaintiffs contend that defendant's alleged procedural error is sufficient ground to justify an order or remand, particularly because plaintiffs incorrectly estimate that federal jurisdiction is in doubt. *See Stockyards Bank v. National Surety Corp.*, 42 F.Supp. 10 (W.D. Ky 1941). Plaintiffs' argument fails on two grounds. First, the notice of removal was timely under 28 U.S.C. § 1446, and it is the notice of removal which invokes the jurisdiction of the court, not pleadings responsive to the plaintiff's claims. Second, plaintiffs' argument fails because it misconceives the manner in which the Rule 81(c) time period is calculated. Rule 81(c) provides the time period for a defendant to file an answer, or defenses under Rule 12 in lieu of an answer, upon removal of a case to federal court when such removal occurs prior to filing an answer or defenses. The period prescribed is (a) twenty (20) days after the defendant's initial receipt of the Complaint, (b) twenty (20) days after the service of summons on such initial pleading, or (c) five (5) days after the filing of the petition for removal, whichever period is longest. Here, the defendant was served with the Complaint on February 4, 2005 and the defendant filed its Notice of Removal on February 24, 2005. The defendant's motion to dismiss was filed on March 2, 2005, six (6) calendar days after the filing of the Notice of Removal. While plaintiffs argue the motion to dismiss was late, they overlook FED. R. CIV. P. 6(a), which provides that weekends and legal holidays are specifically excluded from the calculation of any period of time less than *eleven* (11) days. Since February 24, 2005 fell on a Thursday, five business days from that date was Thursday, March 3, 2005. The defendant's motion, even if it had an impact on the subject matter jurisdiction of the court, was timely filed.

Case 3:05-cv-00011-NKM-BWC   Document 20   Filed 07/15/05   Page 16 of 20   Pageid#: 175

*R.F. & P.R. Co.*, 116 Va. 211, 217 (1914)). The question is whether the easement agreement executed by the Chiltons and Atlantic Seaboard is ambiguous with respect to the meaning of the phrase "pipeline and appurtenances" in the granting clause and the term "gas line" in the restriction clause. If the language of the agreement, considered within the four corners of the document, is determined to be unambiguous, the court must construe it according to its plain meaning. *Pyramid Development LLC v. D & J Associates*, 262 Va. 750, 754 (2001). Otherwise, the court must admit parol evidence concerning the circumstances of the agreement and, in this case resolve all factual issues after discovery is complete.[5] *Eure v. Norfolk Shipbuilding & Drydock Corp.*, 263 Va. 624, 632 (2002); *Strickland v. Barnes*, 209 Va. 438, 445 (1968).

The granting clause of the agreement provided:

"Robert S. Chilton, Jr. and Catherine B. Chilton, his wife, do hereby grant unto Atlantic Seaboard Corporation, its successors and assigns the right to lay, operate and remove a *pipeline for the transportation of gas, and appurtenances*, including cathodic protection, necessary to operate said pipeline, *on, over and through* a right of way easement . . . ."

The restriction clause then provided:

"It is agreed that the *gas line* to be laid under this grant shall be constructed and maintained *below cultivation*, so that Grantors may fully use and enjoy the premises, except for the purposes herein granted to the said Grantee and provided that said Grantor shall not place or permit to be placed any house, structures, trees or obstructions on or over or that will interfere with the construction, maintenance, operation or removal of the pipeline or appurtenances constructed hereunder . . . ."

Columbia argues that the usual, ordinary and popular meaning of the term "gas line" is identical to the term "pipeline," such that the restriction clause does not preclude the construction of above-ground appurtenances like a gas valve facility, so long as the facility remains within the physical boundaries of the easement. The plaintiffs, on the other hand, contend that the transparent

---

[5] On the current state of the pleadings, neither side has requested a jury.

-17-

meaning of "gas line" includes both the "pipeline for the transportation of gas" and "appurtenances," such that the above-ground installation of the appurtenance here, namely the gas valve facility, exceeded the scope of the easement and constituted a trespass upon the plaintiffs' land. The parties, particularly the defendant, somewhat exhaustively attempt to parse the meanings to the two terms and provide decisional authority from other state jurisdictions in an effort to support their respective conclusions. The undersigned declines to repeat or even summarize those efforts here.

Some might observe that when it takes exhaustive effort to clarify terms which the parties contend already are plain and clear, what does become clear is the ambiguity. Others might say that when separate terms are used in a document such as the instant easement, and apparently intentionally so, and where the definition attached to that use cannot be gleaned from the four corners of the document, but only in the context of the circumstances giving rise to the use of separate terms, an ambiguity exists. Evidence, therefore, would need to be adduced concerning either or both the specific circumstances giving rise to the use of separate terms and/or the custom and use of those terms in the trade, business or occupation before assigning their proper meaning. Still others, upon an independent search for the definition of the terms, may discover that either or both "gas line" and "pipeline" may pertain to entire delivery systems, especially when the words "appurtenances" or "facilities" may be associated. Thus, if restricted to below cultivation level, the easement would preclude the use to which the defendant put the surface. In short, a facial review of the clauses before the court does not resolve the present dispute even where each clause of the easement should be read as to give meaning wherever possible. *See Hitachi Credit American*

Case 3:05-cv-00011-NKM-BWC   Document 20   Filed 07/15/05   Page 18 of 20   Pageid#: 177

*Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999).[6]

Accordingly, the undersigned hereby RECOMMENDS that an order enter DENYING the defendant's motion to dismiss under Rule 12(b)(6).[7] Additionally, as plaintiff's motion to voluntarily dismiss Count Four is unopposed, the undersigned RECOMMENDS that an order enter GRANTING that motion.

**SUMMARY**

In sum, the undersigned RECOMMENDS that both plaintiffs' motion to remand and defendant's motion to dismiss be DENIED and plaintiff's motion to voluntarily dismiss Count Four be GRANTED.

The Clerk is directed to immediately transmit the record in this case to the Hon. James H. Michael, Jr., Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may

---

[6] The undersigned finds *Withers v. Mobile Gas Service Corporation, et al*, 567 So.2d 253 (Ala. 1990) and *Koelsch, et al, v. Industrial Gas Supply Corp.*, 132 S.W.3d 494 (Tex. App. 2004) to be inapposite for two reasons. First, the easements in those cases differ from the one here. Second, the undersigned believes that it would be necessary to conflate the terms "gas line" and "pipeline" in order to obtain the result defendant seeks under those cases. The undersigned declines to do so, and recommends that the presiding court also decline such invitation.

[7] Since the undersigned finds the easement agreement ambiguous with respect to the scope of the restriction clause, the defendant's argument that installation of the gas valve facility was "reasonably necessary" to enjoy the full rights established by the easement is moot until the meaning of the restriction clause is clarified. In the undersigned's view, the extent to which the restriction clause specifically limits the defendant's use of the easement and plaintiff's alternative claim for damages in Count One cannot be decided on a motion, if at all before trial, until discovery is complete. Compare *County of Patrick, Virginia v. United States*, 596 F.2d 1186 (4th Cir. 1979)

Case 3:05-cv-00011-NKM-BWC   Document 20   Filed 07/15/05   Page 19 of 20   Pageid#: 178

become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

7/15/05
Date